IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GLOBAL CONTACT, INC. | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 04 CV 06911 |
| | : | |
| | : | |
| PRECISION TUBE CO. | : | |
|     Defendant | : | **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF JURY INSTRUCTIONS**

In the instant case, Global provided technical specifications for the materials and design of the tubes to be specially manufactured by Precision Tube. Precision Tube was bound to provide tubes that met the contract specifications provided without deviation.[1] If it provided goods that met the contract specifications, Precision Tube cannot be held liable for breach of warranty or for any damages resulting from any inadequacy of the plaintiff's design.[2] The contract specifications establish the standards by which the quality of the goods delivered must be judged and the only question that should be presented to the jury is whether the goods delivered conformed to the contract specifications provided.

Under the Uniform Commercial Code, Section 2-317, the implied warranties of merchantability and of fitness for a particular purpose must give way to the express warranties contained in any product specifications provided by the buyer. The Official Comment to Section

---

[1] *MacKnight Flintic Stone Co. v. Mayor of the City of N.Y.*, 160 N.Y. 72, 82-83, 54 N.E. 661, 663-64 (1899)(seller bound to produce goods in "absolute conformity" to specifications provided by buyer).
[2] *U.S. v. Spearin*, 248 U.S. 132, 30 S.Ct. 59 (1918)(where government specified materials, dimensions, location and character of sewer to be constructed by contractor, contractor not liable for inadequacies in sewer due to design); *Tide Water Bldg. Co. v. Hammond*, 129 N.Y.S. 355 (1911)(where contractor followed plans of owner for building roof and waterproofing walls, contractor not liable where owner's plans proved insufficient); *cf. Szatkowski v. Turner & Harrison, Inc.*, 184 A.D.2d 504, 584 N.Y.S.2d 170 (1992)(holding "contractor is not responsible for injuries resulting from a defective plan or design if it diligently complies with the specifications furnished to it by the owner.")

2-316, Exclusion or Modification of Warranties, paragraph 9, explains the rule:

> The situation in which the buyer gives precise and complete specifications to the seller is not explicitly covered in this section [2-316], but this is a frequent circumstance by which the implied warranties may be excluded. The warranty of fitness for a particular purpose would not normally arise since in this situation there is usually no reliance on the seller by the buyer.[3] The warranty of merchantability in a transaction of this type, however, must be considered in connection with the next section [2-317] on the cumulation and conflict of warranties. Under paragraph (c) of that section [2-317] in case of an inconsistency the implied warranty of merchantability is displaced by the express warranty that the goods will comply with the specifications. Thus, where the buyer gives detailed specifications as to the goods, neither of the implied warranties as to quality will normally apply to the transaction unless consistent with the specifications.

McKinney's Uniform Commercial Code, §2-316, Comment 9 (footnote added).[4]

Further, pursuant to Section 2-316(3)(b) of the Uniform Commercial Code, all implied warranties are excluded when the buyer inspects the goods at issue.

> When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

McKinney's Uniform Commercial Code, §2-316(3)(b). This rule arises from "the nature of the responsibility assumed [or not assumed] by the seller" under the contract.[5]

The United States Court of Appeals for the Seventh Circuit considered §2-316(3)(b) in *Trans-Aire International v. Northern Adhesive Company*.[6] In that case, the plaintiff contracted with Northern Adhesive to provide an adhesive to be used in a specific application. It provided Northern Adhesive with a general description of the application and obtained samples. Plaintiff

---

3 *See Leahy v. Mid-West Conveyor Co.*, 120 A.D.2d 16, 19, 507 N.Y.S.2d 514 (1986)("Since defendants, the sellers, built the [product] according to the exact specifications of [the buyer], no warranty of fitness for a particular purpose arose.")
4 *See also, Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F.Supp. 2d 357, 371 (W.D.N.Y. 2003) (quoting Comment 9 with approval); N.Y. Jur. 2d Sales & Exchanges of Personal Property, § 248 (quoting Comment 9 in its entirety). *Accord Icelandic Airlines, Inc. v. Canadair, Ltd.*, 104 Misc.2d 239, 247, 428 N.Y.S.2d 393, 400 (1980)(where product manufactured in accordance with specifications supplied by seller, there is no implied warranty of merchantability).
5 McKinney's Uniform Commercial Code, §2-316, Comment 8.

2

tested the samples and found them to be acceptable for their specific purpose. Following its testing, plaintiff ordered several shipments of adhesive. The adhesive sold ultimately failed in conditions which were not replicated during plaintiff's testing.[7] The Seventh Circuit held that the plaintiff's examination and testing of the product precluded any implied warranties under § 2-316.[8]

The United States Court of Appeals for the Second Circuit reached the identical conclusion in *Sobiech v. International Staple and Machine*.[9] In that case, the plaintiff tested several the defendant's packing machines in its vegetable packing operations. Although he had experienced some difficulties with it during the trial period, plaintiff decided to purchase the machines. After using the machines for several years, the plaintiff sued alleging that the machines did not perform as warranted.[10] The district court held that the defendant manufacturer had made implied warranties as to performance which had not been expressly disclaimed in writing under §2-316(2) and found for the plaintiff.[11] The Second Circuit reversed, holding that the implied warranties were excluded as a matter of law. Relying on § 2-316(3)(b), the *Sobiech* court ruled that "when a purchaser has fully examined goods prior to purchasing, there is no implied warranty with regard to defects that an examination ought to have revealed to the purchaser."[12]

In the case now before the Court, there can be no warranties as to quality beyond the express warranty that the goods would conform to the agreed upon specifications. The plaintiff provided technical specifications regarding the design, dimensions and materials to be used in

---

6 882 F.2d 1254 (7th Cir. 1989)(applying § 2-316 as adopted in Illinois, Ill. Ann. Stat. ch. 26, para. 2-316).
7 *Id.* at 1256.
8 *Id.* at 1258.
9 867 F.2d 778 (2d Cir. 1989).
10 *Id.* at 779.

the goods to be specially manufactured by Precision Tube. Precision Tube agreed to manufacture the goods in accordance with the contract specifications. Precision Tube contends that the goods met the contract specifications, while the plaintiff contends otherwise. This is the only warranty issue the jury should be permitted to consider. The existence of the detailed technical specifications provided by the plaintiff precludes any consideration by the jury of any other warranty claim based on any additional implied and inconsistent standards.[13]

Equally significant is the inspection and approval of the sample goods on behalf of Global Contacts before shipment. The parties agreed that a sample of the goods would be inspected by a third-party inspector designated by Global Contacts' customer – Qatar Petroleum. The parties further agreed that if Precision Tube was not able to produce goods that met the required specifications or which failed to pass the inspection, all deposits would be returned and contract would be voided without further liability on behalf of either party.[14] In essence, the contract was only tentative until the pre-shipment inspection of samples and the acceptance by Global Contacts and its customer. The inspection by the designated third-party engineer took place, but he was not willing to release the goods until they were analyzed and approved by Qatar Petroleum. Later, after receiving word that Qatar Petroleum had approved the sample goods, the engineer released the initial shipment and several subsequent shipments of tubes.[15]

---

11 *Id.* at 780.
12 Id. at 782-83.
13 McKinney's Uniform Commercial Code, §2-316, Comment 9. *See also, Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F.Supp. 2d 357, 371 (W.D.N.Y. 2003); N.Y. Jur. 2d Sales & Exchanges of Personal Property, § 248. Even if the implied warranty of merchantability were to apply here, the jury would necessarily have to judge the quality of the goods with reference to the specifications provided. For such specially designed and manufactured goods, there would be no other measure of quality. *See Wakerman Leather Co. v. Irvin B. Foster Sportswear Co.*, 34 A.D.2d 594, 308 N.Y.S.2d 103 (1970)(goods meeting contract terms and conforming to design specifications precluded claim for breach of implied warranty of merchantability).
14 Exhibit D015.
15 The technical experience of the third-party engineer and the end-user is significant. As the Official Comment to §2-316 notes, "The particular buyer's skill and the normal method of examining goods in the circumstances determine what defects are excluded by the examination. . . . A professional buyer examining a product in his field

Like the conduct of the purchasers in *Trans-Aire* and *Sobiech*, Global Contacts and its customer had a full opportunity to inspect and test the goods before the contract was finalized. It even had the opportunity test the tubes in the specific application. That inspection was performed, and the goods were deemed acceptable and manufactured in accordance with the agreed upon specifications. Those inspections on behalf of the buyer preclude any implied warranties as to the performance of the goods of conforming to the specifications.

This is true even if the specifications provided by the buyer or the testing performed on its behalf proved inadequate. If a buyer provides a design specification for goods, in which the design, materials and/or methods of production or construction are outlined, the manufacturer or contractor must follow that design specification without deviation and bears no responsibility if the design proves inadequate to achieve an ultimate intended result.[16] If a seller supplies a product that meets the design specifications of the buyer, the fact that the design proves insufficient for the particular use the buyer had intended does not provide a sufficient basis to sustain a breach of warranty claim.[17] In such a case, the party supplying the specifications is the one who bears the risk of the design being insufficient.[18]

Further, the question to be answered by the jury is not whether the product as designed by the plaintiff failed in its ultimate application. The ultimate failure could be the result of faulty specifications, inadequate testing or some other reason, none of which could be attributed to a

---

will be held to have assumed the risk as to all defects which a professional in the field ought to observe, while a nonprofessional buyer will be held to have assumed the risk only for such defects as a layman might be expected to observe." McKinney's Uniform Commercial Code, §2-316, Comment 8.

16 *Fruin-Colnon Corp. v. Niagara Frontier Transp. Auth.*, 180 A.D.2d 222, 230, 585 N.Y.S.2d 248, 253 (1992)(*citing U.S. v. Spearin*, 248 U.S. at 136, 39 S.Ct. at 60; *MacKnight*, 160 N.Y. at 82-83, 54 N.E. at 661).
17 *Sam's Marine Park Enters., Inc. v. Admar Bar & Kitchen Equip. Corp.*, 103 Misc.2d 276, 278, 425 N.Y.S.2d 743, 745 (N.Y. Civ. Ct. 1980).
18 *MacKnight*, 160 N.Y. at 83-84, 54 N.E. at 664 (where contractor was provided specifications for waterproofing floor, and followed specifications exactly, contractor not liable where floor ultimately was not waterproof, as owner and not contractor "specifically selected both material and design, and ran the risk of a bad result.")

breach of warranty by Precision Tube. The jury must be instructed on how to judge the quality of the product provided by Precision Tube – did the goods sold meet the specifications provided by the buyer? It should not be instructed to decide whether the product turned out to be defective in its ultimate use. Defect is a tort concept, limited to personal injury claims arising under § 402A. It is not appropriate in actions arising under contract, which are governed by the standards agreed upon by the parties. The economic loss doctrine bars all claims sounding in tort which seek to recover only economic loss. In such cases, the plaintiff's only avenue of recovery is in contract.[19] Further, the use of the term "defect" would be confusing to the jury, in that it provides no guidance to the jury on how to judge the quality of the goods provided by Precision Tube. In this contract action, the parties explicitly agreed what was to be provided and agreed to the technical standards to which the goods would conform. The jury must be instructed that it must consider only those explicit agreed upon quality standards when determining liability.

Respectfully submitted,

DALLER GREENBERG & DIETRICH

By: _____ /DRC
Edward A. Greenberg
Eight Tower Bridge
161 Washington Street, Suite 900
Conshohocken, PA 19428-2060
(215) 836-1100
Attorneys for Defendant Precision Tube Co.

---

[19] See Key International Manufacturing, Inc. v. Morse/Diesel, Inc., 142 A.D.2d 448, 451, 536 N.Y.S.2d 792 (1988).